UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES KAIGLER AS ADMINISTRATOR OF THE SUCCESSION OF JOHN KAIGLER | CIVIL ACTION |
| vs | NO: |
| MEDTRONIC, INC., MEDTRONIC PUERTO RICO, INC. & MEDTRONIC PUERTO RICO OPERATIONS, CO. | SECTION: "   "<br>MAGISTRATE: |
| FILED:_____ | _____<br>DEPUTY CLERK |

## COMPLAINT

Plaintiffs, John Kaigler, by undersigned counsel hereby commences this Civil Action against Medtronic, Inc, Medtronic Puerto Rico, Inc. and Medtronic Puerto Rico Operations, Co. (hereinafter collectively "Defendants" or "Medtronic", unless otherwise stated) for compensatory, equitable, injunctive, and declaratory relief. Plaintiff makes the following allegations based upon his personal knowledge as to his own acts, and upon information and belief, as well as upon, attorney's investigative efforts as to Medtronic's actions and misconduct, and alleges as follows:

### SUMMARY OF ALLEGATIONS

1. At all times relevant, the **implantable cardioverter-defibrillator** leads were researched, developed, manufactured, marked, promoted, advertised and sold by Medtronic.

2. At all times relevant, Medtronic misrepresented the safety of the Sprint Quattro Secure leads, and negligently manufactured, marketed, advertised, promoted, sold and distributed the leads as safe and effective devices to be used for implantation with ICDs for prophylactic treatment of patients with myocardial infarction and a limited ejection fraction, patients who have spontaneous and/or inducible life-threatening ventricular arrhythmias, and patients who are at high risk for developing such arrhythmias, and patients who are at high risk for developing such arrhythmias.

3. At all times relevant to this action, Medtronic knew, and had a reason to know, that the Sprint Quattro Secure leads were not safe for the patients for whom they were prescribed and implanted, because the leads fractured and otherwise malfunctioned, and therefore failed to operate in a safe and continuous manner, causing serious medical problems and, in some patients, catastrophic injuries and deaths.

4. At all times relevant to this action, Medtronic knew or had reason to know, that its representations that the Sprint Quattro Secure leads were easier to implant and based on "proven" technology were materially false and misleading.

5. As a result of this defective design and manufacture, the Sprint Quattro Secure leads can cause serious physical trauma and/ or death. Medtronic knew and had reason of this tendency and the resulting risk of injuries and deaths, but concealed this information and did not warn Plaintiff or his physician, preventing Plaintiff, and his physician, and the medical community from making informed choices about the selection of leads for implantation.

6. The Plaintiff in this matter, John Kaigler, was implanted with such a device, which malfunctioned causing the plaintiff to be shocked on numerous occasions ultimately leading to his death.

## PARTIES

7. Plaintiff, James Kaigler is the duly appointment administrator of the Succession of John Kaigler and is a citizen and adult resident of New Orleans, Louisiana.

8. Defendant Medtronic has its principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432. Medtronic develops technology to treat conditions such as heart disease and other illnesses. Medtronic manufactures medical devices and sells them worldwide. Medtronic's Cardiac Rhythm Disease Management Division ("CRM Division") is the division that develops, researches, advertises, promotes, markets and sells all of the Medtronic implantable defibrillators ("ICDs"), and leads, some of which are marketed under the trade name " Sprint Quattro Secure" CRM Division's operations are principally conducted out of its facilities at Cardiac Rhythm Disease Management at 7000 Central Ave., Minneapolis, Minnesota 55432.

9. Defendant Medtronic Puerto Rico, Inc. is a Corporation existing by virtue of the laws of the Territory of Puerto Rico, with its principal place of business at Road 149, km 56.3, Box 6001, Villalba, PR.

10. Defendant Medtronic Puerto Rico Operations Co. is a corporation existing by virtue of the laws of the Territory of Puerto Rico; with its place of business at Road 149; lan 56.3, Box 6001, Villalba, PR.

## JURISDICTION AND VENUE

11. The Court has subject matter jurisdiction pursuant to 28 U.S.C section 1332 (d) as the parties are citizens of different states and the matter in controversy exceeds the jurisdictional amount exclusive of interest and costs.

12. Venus is proper under 28 U.S.C. section 1391 (a) and (c). Medtronic Inc. earns substantial compensation and profits from sales of Sprint Quattro Secure leads, among many other products, in this District. The injury occurred in the Eastern District of Louisiana.

## FACTUAL BACKGROUND

13. Medtronic designs, researches, develops, manufactures, tests, markets, advertises, promotes, distributes, and sells products that treat cardiac arrhythmias, heart failure, and coronary and peripheral vascular disease. An arrhythmia is an irregular cardiac rhythm, which can cause significantly decreased cardiac output and ultimately, death. Medtronic holds itself out as "the global leader in medical technology, alleviating pain, restoring health and extending life for millions of people around the world. "See 2005 Annual Statement, Medtronic, Inc."

## ALLEGATIONS

14. Medtronic designed, manufactured, marketed, promoted, sold, and distributed the defective Sprint Quattro Secure lead.

15. The Sprint Quattro Secure lead implanted in Mr. John Kaigler was defective and caused him to receive terrifying inappropriate defibrillation shocks.

16. There is no test that predicts whether the Sprint Quattro Secure leads will fail.

17. To this day, Medtronic has refused to suggest replacement of the defective Sprint Quattro Secure leads in its patients even in patients whom these defects have been discovered and emergency replacement of the leads is required.

### A. Medtronic's Concealment of the Defects

18. Medtronic's failure to document or follow up on the know defects in its Sprint Quattro Secure leads, and concealment of known defects from the FDA. Plaintiff, the medical community constitutes fraudulent concealment that equitably tolls applicable statutes of limitation.

19. Medtronic is estopped from relying on the statute of limitations defense because Medtronic actively concealed the lead defects, suppressing reports. Failing to follow through on FDA notification requirements, and failing to disclose known defects to physicians or class members. Instead of revealing the defects, Medtronic continued to represent its products as safe for their intended use.

20. Medtronic's conduct, as described in the preceding paragraphs, amounts to conduct purposely committed which Medtronic must have realized was dangerous, and reckless, without regard to the consequences or rights and safety of Plaintiff.

### B. Defendants are Alter Egos of One Another

21. At all times herein mentioned, each of the Defendants was the agent, servant, partner, aide and abettor, co-conspirator and/or joint venture of each of the other defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership. Conspiracy and/ or joint venture and rendered substantial assistance and encouragement to the other

Defendants, knowing that their collective conduct constituted a branch of duty owed to Plaintiff.

22. There exists and, at all times herein mentioned, existed a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendants and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain defendants as entities distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction a fraud and /or would promote injustice.

23. At all times herein mentioned, Defendants, were engaged in the business of, or were successors in interest to, entitles engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packing, prescribing and/or advertising for sale, and selling products for use by Plaintiff. As such, each Defendant is individually, as well as jointly and severally, liable to Plaintiff for Plaintiff's damages.

24. At all times herein mentioned, the offices and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have know, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortuous misconduct that resulted in the injuries suffered by Plaintiff.

## PLAINTIFF

25. Plaintiff, John Kaigler had a cardiovascular condition that necessitated the use of an implantable cardiac peacemaker/ defibrillator. Plaintiff, John Kaigler was implanted with a cardiac peacemaker/defibrillator combination (an "ICD"). The ICD was attached to his heart with a lead wire system manufactured by Medtronic. It is believed that the lead system was implanted on or about September 2005. It was placed in Mississippi.

## CLAIMS FOR RELIEF

26. Plaintiff re-alleges the allegations contained in the foregoing paragraphs.

27. At all relevant times hereto, Medtronic was engaged in the business of designing, manufacturing, assembling, promoting, advertising, selling and distributing the Sprint Quattro Secure leads for ultimate sale to, and implantation in, heart disease/ disorder patients. Medtronic designed, manufactured, assembled, and sold the Sprint Quattro Secure leads to hospitals and physicians, knowing that they would be thereby sold to patients with heart diseases and disorders including Plaintiff.

28. Medtronic's Sprint Quattro Secure leads were expected to and did reach Plaintiff without substantial changed in their condition as manufactured and sold by Medtronic. In light of the defects described herein, at the time the leads reached Plaintiff, they were in a condition not contemplated by any reasonable person among the expected users of the devices when used reasonable ways of handling or consumption.

29. The Sprint Quattro Secure leads designed, manufactured, assembled, and sold by Medtronic to Plaintiff were in a defective condition unreasonably dangerous to

any user or consumer of the devices, and Plaintiff was, and is, in the class of persons that Medtronic should reasonably have foreseen as being subject to the harm caused by the devices defective condition.

30. Plaintiff used the leads in the manner in which the leads were intended to be used. This has resulted in injuries to Plaintiff.

31. Plaintiff was unaware of, and could not in the exercise of reasonable care have discovered, the defective nature of Medtronic's Sprint Quattro Secure leads, nor could they have known that Medtronic designed, manufactured or assembled the leads in a manner that would increase the risk of bodily injury to Plaintiff.

32. As a direct and proximate result of Medtronic's design manufacture, assembly, marketing and sales of the Sprint Quattro Secure leads, Plaintiff has sustained severe physical injuries resulting in his death, severe emotional distress, and economic losses and consequential damages, and is therefore entitled to compensatory relief according to proof, and entitled to declaratory judgment that Medtronic is liable to him for breach of its duty to Plaintiff and Medtronic's failure to provide a safe and effective medical device; and Plaintiff is entitled to equitable relief as described below.

33. Medtronic's Sprint Quattro Secure leads constitute a product dangerous for its reasonably intended use, due to defective design, manufacture, assembly and marketing. Medtronic is therefore liable to Plaintiff in an amount according to proof.

## SECOND CLAIM FOR RELIEF

### (Breach of Implied Warranty)

34. Plaintiff re-alleges the allegations contained in the foregoing paragraphs.

35. Medtronic implicitly warranted that its Sprint Quattro Secure leads, which Medtronic designed, manufactured, assembled, promoted and sold to Plaintiff were merchantable and fit for the particular purpose of providing electrical current to the ICDs, which in turn provided prophylactic treatment of patients with a variety of medical issues, including prior myocardial infarction and a limited ejection fraction, spontaneous and/or inducible life-threatening ventricular arrhythmias, and a high risk for developing such arrhythmias.

36. Medtronic further implicitly warranted that its Sprint Quattro Secure leads were based on "proven" lead technology and that the Sprint Quattro Secure leads were easier to implant.

37. Medtronic's Sprint Quattro Secure leads were defective, unmerchantable, and unfit for ordinary use when sold, and unfit for the particular purpose for which they were sold, and subjected Plaintiff to severe and permanent injuries and damages. Therefore, Medtronic breached the implied warranties of injuries and damages. Therefore, Medtronic breached the implied warranties of Merchantability and fitness for a particular purpose when its leads were sold to Plaintiff – that the leads are defective and have fractured and otherwise failed to function as represented and intended.

38. As a direct and proximate result o Medtronic's breach of the implied warranties of merchantability and fitness for a particular purpose, Plaintiff has sustained and will continue to sustain severe physical injuries, severe emotional distress, and

economic losses, and is therefore entitled to compensatory damages and equitable relief according to proof.

39. Plaintiff re-alleges the allegations contained in the foregoing paragraphs.

40. Medtronic had a duty to Plaintiff to provide a safe product in design and manufacture, to notify the FDA of design flaws, and to warm the FDA of the defective nature of the Sprint Quattro Secure leads. Medtronic breached its duty of reasonable care to Plaintiff by incorporating a defect into the design of the Sprint Quattro Secure leads, thereby causing Plaintiff's injuries losses and damages.

41. Medtronic breached its duty of reasonable care to Plaintiff by manufacturing and assembling the Sprint Quattro Secure leads in such a manner that they were prone to fracture and fail to operate and malfunction and expose Plaintiff to life-threatening physical trauma.

42. Medtronic breached its duty of reasonable care to Plaintiff by failing to notify the FDA at the earliest possible date of known design defects in the leads.

43. Medtronic breached its duty of reasonable care to Plaintiff by failing to voluntarily recall the leads at the earliest possible date of known design defects in the leads.

44. Medtronic breached its duty of reasonable care to Plaintiff by failing to exercise due care under circumstances.

45. As a direct and proximate result of the carelessness and negligence of Medtronic as set forth in the preceding paragraphs, Plaintiff has sustained and will continue to sustain severe physical injuries, emotional distress, economic losses and other

damages, are entitled to compensatory damages equitable and declaratory relief according to proof. Medtronic's egregious misconduct alleged above also warrants the imposition of punitive damages against Medtronic.

## FOURTH CLAIM FOR RLIEF

### {Intentional Infliction of Emotional Distress}

46. Plaintiff re-alleges the allegations contained in the foregoing paragraphs.

47. Medtronic engaged in extreme and outrageous conduct, knowingly and/or recklessly marketing defective leads, knowingly and/or recklessly concealing a known and potentially fatal defect from Plaintiff, knowingly and/or recklessly misrepresenting the quality and usefulness of the Sprint Quattro Secure leads.

48. As a direct result of Medtronic's misconduct, Plaintiff has sustained and will continue to sustain emotional distress, economic losses, and other damages.

49. Medtronic intended to cause Plaintiff severe emotional distress, or acted with reckless disregard for the Plaintiff's emotional state.

50. Plaintiff did, in fact, incur (and continue to incur) severe emotional distress as a result of Medtronic's misconduct. Accordingly, Plaintiff is entitled to compensatory damage and equitable and declaratory relief according to proof.

51. Medtronic's misconduct alleged above warrants the imposition of punitive damages against Medtronic.

## FIFTH CLAIM FOR RELIEF

### {Negligent Infliction of Emotional Distress}

52. Plaintiff re-alleges the allegations contained in the foregoing paragraphs.

53. Medtronic carelessly and negligently manufactured. Marketed and sold defective Sprint Quattro Secure leads to Plaintiff; and carelessly and negligently misrepresented the quality, safety and usefulness of the leads.

54. Plaintiff was directly impacted by Medtronic's carelessness and negligence, and as a result, Plaintiff has sustained and will continue to sustain severe emotional distress.

55. Medtronic's misconduct as alleged above has caused Plaintiff to suffer severe emotional trauma, physical consequences and long continued emotional disturbance. Plaintiff is therefore entitled to compensatory damages and equitable and declaratory relief according to proof.

## SIXTH CLAIM FOR RELIEF

### {Violation of Consumer Protection Statutes}

56. Plaintiff re-alleges the allegations contained in the foregoing paragraphs.

57. Under statutes enacted in Louisiana and Puerto Rico to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Plaintiff is a consumer transaction for personal use and is therefore subject to protection under such legislation.

58. Under consumer protection statues enacted to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Defendants are the supplier, manufacturer, advertiser, and seller, who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

59. Medtronic violated the statutes enacted to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the leads were fit to be used for the purpose for which they were intended when, in fact, the leads were defective and dangerous. These representations were made in uniform promotional materials.

60. The actions and omissions of Medtronic alleged herein are uncured or incurable deceptive acts under the statutes enacted to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

61. Medtronic had actual knowledge of the/deceptive and dangerous condition of the Spring Fidelis leads, and failed to take any action to cure such defective and dangerous conditions, well in excess of thirty (30) days before Plaintiff did or could have possessed any such knowledge.

62. As a direct result of Medtronic's violations of the statues enacted to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Plaintiff has been damaged.

63. Plaintiff is therefore entitled to compensatory damages, equitable and declaratory relief and any and all other available statutory remedies according to proof.

64. Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the design, development, manufacture, promotion and sale of Sprint Quattro Secure leads.

65. Had Defendants not engaged in the wrongful and deceptive conduct described above. Plaintiff would not have purchased and/or paid for the leads and she has therefore proximately suffered injury in fact and ascertainable losses.

66. Defendants' deceptive, unconscionable or fraudulent representations and material omissions to consumers, including the failure to inform consumers of the leads and the mislabeling of the same constituted unfair and deceptive acts and practices in violation of state consumer protection statues. Defendants' failure to abide by their statutory duties has been or may be continuing.

67. Defendants engaged in, their wrongful conduct while at the same time obtaining sums of money from Plaintiff for leads.

68. Defendants have a statutory duty to refrain from unfair or deceptive acts or practices in the design, development, manufacture, promotion and sale of the defective leads.

69. Had the Defendants not engaged in the deceptive conduct described above, Plaintiff would not have purchased and/or paid for the defective leads, and would not have incurred related medical costs.

70. Defendants' deceptive, unconscionable or fraudulent representations and materials omissions to patients, physicians and consumers, including Plaintiff, constituted unfair and deceptive acts and practices in violation of the state consumer protection statutes listed below.

71. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, substantial sums of money from Plaintiff for the defective leads

that he/she would not have paid had Defendants not engaged in unfair and deceptive conduct.

72. Defendants' actions, as complained of herein, constitute unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of state consumer protection statutes.

73. Plaintiff was injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at patients, physicians and consumers was to create demand for and sell the defective leads. Each aspect of Defendants' conduct combined to artificially create sales of the defective leads.

74. The medical community relied upon Defendants' misrepresentations and omissions in determining which lead to utilize.

75. By reason of the unlawful acts engaged in by Defendants. Plaintiff has suffered ascertainable loss and damages.

76. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff was damaged by paying in whole or part for these defective leads.

77. As a direct and proximate result of Defendants' violations of state consumer protection statutes, Plaintiff has sustained economic losses and other damages for which she is entitled to statutory, compensatory damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Plaintiff jointly and severally for all general, special and injunctive relief to which Plaintiff is entitled by law. As a direct and proximate results of Defendants' wrongful conduct, Plaintiff to a judgment that declaring that Defendants' actions have been in

violation of their statutory duties, that provides injunctive relief in order to ensure continued wrongful and similar acts do not occur hereafter, and that provides compensatory damages, treble damages, attorney's fees, and/or cost of suit.

### SEVENTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

78. Plaintiff hereby incorporates by references all preceding paragraphs as if fully set forth herein.

79. At the time Defendants manufactured, designed, marketed, sold and distributed the defective leads for use by Plaintiff. Defendants knew or should have known of the use for which the defective leads were intended and serious risks and dangers associated with such use of these defective leads.

80. Defendants owed a duty to treating physicians and ultimate end users of the defective leads, including Plaintiff, to accurately and truthfully represent the risks of the leads. Defendants breached that duty be misrepresenting and/or failing to adequately warn of the risks of the leads – effects of which Defendants knew or in the exercise of diligence should have known – to the treating physicians and ultimate users, including Plaintiff.

81. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has sustained and will continue to sustain severe physical injuries and/or death, severe emotional distress, economic losses and other damages for which she is entitled to compensatory and equitable damages and declaratory relief in an amount to be proven at trial. Defendants are liable to Plaintiff jointly and severally for all general, special and equitable relief to which Plaintiff is entitled by law.

82. This matter was originally brought by John Kaigler in May of 2008. It was then transferred to an MDL case pending in the District of Minnesota. The case was subsequently Dismissed in June of 2011 from that MDL. Plaintiffs claims have not prescribed due to a tolling agreement authorized by the defendants in the MDL case pending in Minnesota and/or the doctrine of contra non valentem.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendants as follows:

(a) For compensatory damages according to proof;

(b) For the equitable relief requested;

(c) For punitive or exemplary damages against Defendants, consistent with the degree of Defendants' reprehensibility and the resulting harm or potential harm to Plaintiff, and in an amount sufficient to punish Defendants and deter other from similar wrongdoing;

(d) For all applicable statutory damages under the consumer protection legislation of all states identified and the Territory of Puerto Rico;

(e) For declaratory judgment that Defendants are liable to Plaintiff for all evaluative, monitoring, diagnostic, preventative, and corrective medical, surgical, and incidental expenses, costs and losses caused by Medtronic's wrongdoing;

(f) For a restitution and disgorgement of profits;

(g) For an award of attorney's fees and costs;

(h) For prejudgment interest and cost of suit; and

    (i)    For such other and further relief as this Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury in this case as to such issues so triable.

    Respectfully submitted,

    **SHORTY, DOOLEY & HALL, LLC**

    /S/ Edwin M. Shorty, Jr.
    **Edwin M. Shorty, Jr. (LSBA#28421)**
    **Hope L. Harper (LSBA# 33173)**
    **650 Poydras Street, Ste. 2110**
    **New Orleans, LA. 70130**
    **Phone: (504) 949-2545**
    **Fax: (504) 949-2547**